## O'MEARA *v.* MERRITT.

1. SEARCH WARRANT—POLICE JUSTICE—JURISDICTION.

   3 How. Stat. § 6591*d*, confers upon the judge of the police court of Grand Rapids all the powers and authority of a justice of the peace, except in the trial of civil cases.    3 Comp. Laws, § 11986, gives to any magistrate authorized to issue warrants in criminal cases the power to issue search warrants.    Section 11988 requires all search warrants to be directed to the sheriff or any constable of the county.    *Held,* that the judge of such police court has authority to issue a search warrant for property alleged to have been stolen in the city, and to be concealed at a place in the county outside of the city.

2. SAME—LIABILITY OF OFFICER.

   A search warrant in due and legal form, issued by a court of competent jurisdiction, protects an officer from liability for trespass in its execution.

Error to Kent; Wolcott, J.   Submitted April 16, 1901.
Decided September 25, 1901.

Case by Michael O'Meara against Thomas Merritt for
an alleged illegal search of plaintiff's dwelling-house.
From a judgment for defendant, plaintiff brings error.
Affirmed.

*James A. Lombard* and *David E. Burns,* for appellant.

*William B. Brown* ( *Charles A. Watt,* of counsel),
for appellee.

MOORE, J.   This is an action of tresspass on the case
for an alleged illegal search of the dwelling-house of the
plaintiff.   The case was tried by a jury, who returned a
verdict in favor of defendant.   It is brought here by
writ of error.

The defendant is a deputy sheriff of Kent county.   His
defense was that what he did was done in the discharge of
his duty in serving a search warrant issued from the
police court of Grand Rapids.   It is probable this action
would. never have been brought had not the complaint
lodged with the police justice and the warrant issued by
him become misplaced, so that they were not found until
during the progress of the trial.   It is the claim of the
plaintiff, as set up in his declaration, that the defendant,—

" Without any lawful right or authority whatever, but
wrongfully, falsely, and maliciously representing himself
to be in possession of a lawful search warrant lawfully
directing and commanding . him, the said defendant, as
such deputy sheriff, to search said dwelling-house of said
plaintiff for the discovery and recovery of a certain bicycle
alleged to belong to, and to have been stolen from, one
Orville A. Gillette, of the city of Grand Rapids, Kent
county, Michigan, knowing the same to be false and un-
lawful, and then and there, without any lawful right or
authority whatever, and with an unlawful, wicked, and
malicious purpose of obtaining fees as such deputy sheriff,
in a loud, boisterous, and insulting manner, and in the

presence of said plaintiff and his aforesaid children and the said Henry W. Strong, accused and charged said plaintiff with secreting the aforesaid bicycle in his said dwelling-house, in knowing the same to have been stolen, and then and there handed to said plaintiff a paper, falsely, willfully, and maliciously claiming and pretending that the same was a legal and valid search warrant as aforesaid, well knowing the same to be false and unlawful, and demanded," etc.

In making his case the plaintiff produced as witnesses the police justice and his clerk, both of whom testified they had been unable to find any complaint or search warrant, and were unable to recollect any had been issued out of that court. During the progress of the trial, a complaint and warrant were found by the sheriff, which had become mixed with other papers, and put away by him, which papers were fully identified by the police justice as being in the handwriting of the assistant prosecuting attorney, and bearing the signature of the police justice. These papers will be spoken of more in detail later.

There was a sharp conflict in the testimony of the witnesses. There are a good many assignments of error, which may be divided into four groups:

*First.* For the purpose of showing malice on the part of defendant, plaintiff claimed the right to show that defendant had put before the board of supervisors of the county padded bills for fees, and had done so for services rendered in this case. This testimony was excluded.

*Second.* It is claimed the court erred in refusing to give some of plaintiff's requests to charge, and in his statement of the law in his general charge.

*Third.* That defendant was not entitled to take the wheel until he had paid charges to the son of plaintiff. The son had caused a notice to be twice published in a paper, and to be entered in the books of the town clerk, but had not complied with the provisions of the statute.

*Fourth.* It is claimed the police court was without authority to issue a search warrant to be served outside the city of Grand Rapids.

With our view of the case, it is necessary to discuss only the last proposition, which is conclusive of the case.

The record discloses certain things about which there is no dispute. November 16, 1899, one Gillette had a bicycle stolen from in front of his place of business in Grand Rapids. The next morning he reported his loss to the police authorities, giving them a full description of the wheel. These descriptions were furnished to the detectives connected with the police department, who soon learned that a strange bicycle was at Byron, in Kent county, and who reported that fact to the undersheriff. He asked one of his deputies to call up the defendant, who was a deputy sheriff at Byron, and requested him to get a description of the wheel. Before this occurred, a son of the plaintiff had found standing before the store in which he was employed, early one morning, a bicycle. He and his witnesses say he found it the morning of November 13th; but they are evidently mistaken in this, as the wheel was fully identified as the wheel of Mr. Gillette, which was not stolen until the evening of the 16th. The defendant saw young O'Meara, and got a partial description of the wheel, but by mistake took the number of the model, instead of the number of the wheel. Upon telephoning to the office of the sheriff the description of the wheel, he was requested to obtain its number. He sought out the boy, and told him the wheel was stolen, and asked to see it again. The parties are not agreed as to what occurred. The boy claims he told the officer if he would pay the charges he could have the wheel, while the officer claims nothing was said about the charges, and that the boy refused to let him see the wheel. Either before or after this conversation, the wheel was taken to the house of the plaintiff, and was by him taken to a bedroom, the bed was pulled away from the wall, and the wheel was put back of it.

After this last-mentioned conversation between the defendant and the son, the matter ran along until December 2, 1899, when defendant went to the city of Grand Rapids, to consult with the undersheriff, at his request. On arriving in Grand Rapids he saw the undersheriff, and had a consultation with him, and also with the prose-

cuting attorney.   By their advice he went to the police head-
quarters, and the description of the wheel on the books at
headquarters was shown him, which tallied exactly with
the wheel at Byron.   Mr. Gillette, from whom the wheel
was stolen, came to the office of the prosecuting attorney,
and, after consultation between defendant, the prosecutor,
two detectives, and Gillette, a complaint and search war-
rant were drawn up by the prosecuting attorney, who,
with Gillette, went to the police court.   The complaint
was sworn to by Gillette, and a warrant issued by the
judge of the police court of Grand Rapids.

It is the claim of plaintiff that defendant did not tell the
prosecuting attorney that he could have the wheel by pay-
ing the charges.   The defendant admits he did not, for
the reason that he had never been so informed.   The
judge left that question fully to the jury.   The complaint
and warrant issued by the police judge were in due and
legal form, and authorized the search of the house of the
plaintiff for the bicycle.   The warrant was given to the
defendant.   He returned to Byron, and informed the
young man he had the warrant, and with another person
they started to go to the house of plaintiff.   On the way
there the son asked a friend of his to go along, and he did
so.   When they arrived at the house, the son opened the
door, and the parties all went in.   The plaintiff was at
that time in the house.   There is some conflict in the tes-
timony as to what occurred, but the substance of it is the
plaintiff asked why the defendant was there, and he said
he came to serve a search warrant.   It was shown to the
plaintiff, to the son, and to the friend of the son, all of
whom had an opportunity to read it.   The plaintiff de-
manded that the charges be paid before the wheel was
taken.   The defendant replied the man in Grand Rapids
would pay them.   The son got the wheel from back of the
bed, and the defendant took it away.   He delivered it to
the sheriff of Kent county, together with the complaint
and warrant.   The papers remained with the sheriff until
the progress of the trial, as before stated.   The wheel was
afterwards fully identified as the stolen wheel belonging
to Mr. Gillette.   Afterwards this suit was brought.

Whenever there was a controverted question of fact, the judge left the question to the jury for them to determine. The important question in the case is, Was the police judge authorized to issue a search warrant that might be served anywhere in the county of Kent? The plaintiff says no, but fails to find any authority upon the question. The act creating the police court is silent upon the subject of search warrants. In 3 How. Stat. § 6591*d*, is found a statement of the power of the police court. Among other powers conferred upon the judge is, "He shall also have all the powers and authority of a justice of the peace, except in the trial of civil cases." 3 Comp. Laws, § 11986, confers upon any magistrate authorized to issue warrants in criminal cases, upon proper complaint being made, authority to issue search warrants. *Id.* § 11988, requires that all search warrants shall be directed to the sheriff or any constable of the county. That the police judge is a magistrate authorized to issue warrants in criminal cases is not open to question. This being so, he has the authority, upon proper complaint being made, to issue search warrants, which shall be directed as commanded by the statute. The form of the complaint to be made in these cases, found in the fourth edition of Tiffany's Cr. Law, 357, indicates that the learned author understood that for property stolen in the city of Adrian, and concealed in a dwelling-house outside of said city, a search warrant might be issued, and such has been the understanding of lawyers. In this case the complaint showed the larceny of a wheel in the city of Grand Rapids, and reasonable cause to believe it was concealed in the house of plaintiff in Byron. This gave the magistrate authority to issue the warrant, and the warrant, being in due and legal form, was a complete protection to the officer. The court might very properly have directed a verdict in favor of defendant, but preferred to leave any controverted question of fact, under proper instructions, to the jury.

Judgment is affirmed.

The other Justices concurred.